UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES J. EAGAN and
EILEEN R. EAGAN,

                  Plaintiffs,

v.

DR. LESLIE ANN GLASSBRENNER and
GARY GLASSBRENNER,

                  Defendants.

**REPORT AND RECOMMENDATION**

**AND**

**DECISION AND ORDER**

**14-CV-507S**

## I. INTRODUCTION

The Hon. William M. Skretny referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 33.)  Pending before the Court are two motions, one from each side: 1) A dispositive motion (Dkt. No. 20) by plaintiffs James J. Eagan and Eileen R. Eagan ("the Eagans") for partial summary judgment (as to liability) on their claims for breach of contract, fraud, and attorney fees; and 2) a non-dispositive motion (Dkt. No. 26) by defendants Dr. Leslie Ann Glassbrenner and Gary Glassbrenner ("the Glassbrenners") for leave to amend their answer under Rule 15(a)(2) of the Federal Rules of Civil Procedure ("FRCP") and to amend the existing scheduling order accordingly.  This document will serve as a Report and Recommendation to Judge Skretny for the dispositive motion and a Decision and Order for the non-dispositive motion.[1]

---

[1] Motions for leave to amend pleadings are generally considered non-dispositive.  *See, e.g.,*

With respect to the dispositive motion for summary judgment, the Eagans argue that the Glassbrenners lied when they denied that any leases, rents, royalties, wells, or storage facilities affected the property that they were selling. The Eagans believe that documentary evidence confirms the misrepresentations and warrants a finding of breach of contract and fraud as a matter of law. The Glassbrenners question whether the Eagans have submitted documentary evidence in admissible form from people with personal knowledge. On substance, the Glassbrenners argue that the real estate contract in question merged into the deed at closing, thereby extinguishing the contract. The Glassbrenners argue further that the Eagans have not pled fraud properly and that a search of the public record would have furnished them with all the information that they needed concerning any encumbrances on the property in question. Finally, the Glassbrenners contend that the Eagans did not conduct due diligence and that their claims for breach of contract and fraud are impermissibly redundant.

With respect to the non-dispositive motion to amend, the Glassbrenners argue that they have added a new law firm as local counsel since they filed their original answer. New counsel seek to add only a counterclaim for attorney fees under a particular section of the real estate contract in question. The Eagans have not filed any opposition to the motion.

---

*Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007) (Larimer, *J.*).

The Court held oral argument for both motions on March 26, 2015. For the reasons below, the Court respectfully recommends denying the dispositive motion for summary judgment. The Court grants the non-dispositive motion to amend.

## II. BACKGROUND

This case concerns allegations that the Glassbrenners misled the Eagans about leases and natural gas storage encumbering a property that the Eagans purchased from them. On June 6, 2013, the Glassbrenners entered a contract to sell the Eagans a parcel of real property (the "Property") at 8659 Finch Road in Colden, New York. (Dkt. No. 20-5.) Based on the description in the contract, the Property consists of about 64 acres of land with a one-family house and a 16-car garage. The parties agreed on a sale price of $900,000. Under Section 3(D)(5) of the contract, the purchase included "[a]ll of Seller's rights to receive all future rents and royalties due under any lease, agreement or tenancy." (*Id.* at 3.)

A few provisions of the contract appear to be particularly relevant to the Eagans' claims. Section 6 consists of a list of disclosures that the Glassbrenners made to the Eagans. Under Section 6(H), titled "Gas and Oil Wells," the Glassbrenners checked "no" to the statement, "The Property has an uncapped natural gas and/or oil well." (*Id.* at 4.) Under Section 9(B), the Eagans declined to conduct a property inspection. Section 12(A) contains the following warning: "CAUTION: This Property may have easements, rights-of-way and restrictions

3

which may affect intended uses of or improvements to the Property." (*Id.* at 6.) The contract's Property Condition Disclosure Statement contained a question, Question 4, that asked whether anyone other than the Glassbrenners had "a lease, easement or any other right to use or occupy any part of your property **other than those stated in documents available in the public record**." (Dkt. No. 20-6 at 2 (emphasis added).) The Glassbrenners answered "no." In Question 14, the Glassbrenners answered "yes" to whether there had ever been fuel storage tanks above or below the ground on the property and whether those tanks were currently in use. (*Id.* at 3.) Section ATC7 of the contract's Additional Terms and Conditions gave the Eagans the right to a final inspection of the Property before closing and gave the Glassbrenners the responsibility for final utility readings and a transfer of utility services as of the closing date. (Dkt. No. 20-5 at 12.) Section ATC14(C) addressed attorney fees and stated that "[i]n connection with any litigation concerning this Contract, the prevailing Party shall be entitled to recover reasonable attorney's fees and costs. The provisions of this Paragraph ATC14(C) shall survive the Closing or cancellation of this Contract." (*Id.* at 14.)

Prior to closing, the Eagans arranged for a title search for the Property. Chicago Title Insurance Co. completed a title search report, or Commitment for Title Insurance, on July 16, 2013. (Dkt. No. 25-2.) The title search uncovered a

4

total of 42 items affecting the Property that would count as exceptions to any title insurance coverage. The 42 items included the following:

| Item No. | Description | Grantee | Grant Date | Liber / Page |
|---|---|---|---|---|
| 14 | Oil and Gas Lease | Iroquois Gas Corporation | 11/16/1954 | 5662 / 18 |
| 17 | Oil and Gas Lease | Iroquois Gas Corporation | 11/18/1954 | 5659 / 109 |
| 25 | Oil and Gas Lease | Iroquois Gas Corporation | 2/26/1972 | 7918 / 183 |
| 29 | Oil and Gas Lease | Charles E. Fralick | 11/22/1949 | 5145 / 421 |
| 36 | Oil and Gas Lease | Charles E. Fralich[2] | 11/22/1949 | 5145 / 521[3] |

(*Id.* at 9–11.)

Meanwhile, and also on July 16, 2013, the Glassbrenners furnished a document titled, "Oil and Gas Affidavit." (Dkt. No. 20-7 at 2.) The affidavit addressed four other oil and gas leases that had been signed over the years concerning the Property; these leases are not the ones in the table above, but they also appeared in the title search report. In Paragraph 4 of that affidavit, the Glassbrenners wrote, "That no rents or royalties have been received under the terms of **said leases** as **said leases** are expired by their own terms. To the best

---

[2] Different spelling from Item 29.
[3] Likely should be 421. *See infra.*

5

of our knowledge, no wells have been drilled on the premises **nor do any storage facilities exist under the premises**." (*Id.* (emphasis added).)

On July 19, 2013, the parties proceeded to close on the sale of the Property for the agreed price of $900,000. (Dkt. No. 25-3 at 2.)

The event that prompted the Eagans to file suit occurred a short time after they closed on the Property. On or around November 15, 2013, National Fuel Gas Supply Corporation ("National Fuel") sent the Eagans a letter notifying them that it updated its records to reflect the change of ownership of the Property. (Dkt. No. 20-13 at 2.) In the letter, National Fuel disclosed to the Eagans that it "has a oil, gas and storage leases [sic] currently affecting your parcels. National Fuel Gas Supply Corporation is conducting natural gas storage operations in a natural rock formation beneath this land and the many surrounding acres in the area." (*Id.*) The letter lists five active leases affecting the property for which National Fuel had been paying the owners. None of the dates and Liber/Page numbers for these leases matched the dates and Liber/Page numbers for any of the four leases that the Glassbrenners had disclosed in their Oil and Gas Affidavit. However, with the exception of one discrepancy in one page number (*see* note 3 *supra*), the five leases in National Fuel's letter exactly matched the five leases from the title search report that the Court listed in the table above. As part of the letter, National Fuel enclosed a check to the Eagans for its latest payment on the leases. The November 15, 2013 letter appears to have

6

prompted the Eagans to retain counsel and to inquire further about National Fuel's leases. On December 5, 2013, National Fuel sent the Eagans' counsel a second letter. (Dkt. No. 20-14.) In the second letter, National Fuel confirmed the existence of the leases and of certain natural gas storage areas affecting the property. National Fuel advised further "that annual land rental payments were issued to and cashed by Mr. and Mrs. Glassbrenner **for the leases listed**." (*Id.* at 2 (emphasis added).)

Several months after National Fuel's letters, the Eagans filed a summons and complaint against the Glassbrenners on May 30, 2014, in New York State Supreme Court, Erie County. The complaint contained three causes of action. In the first cause of action, the Eagans accused the Glassbrenners of breaching the sale contract by leading them to believe that they would acquire the Property free of any leases, encumbrances, or other restrictions. In the second cause of action, the Eagans accused the Glassbrenners of fraud by providing property disclosures and a sworn affidavit with false information. In the third cause of action, the Eagans invoked Section ATC14(C) of the contract's Additional Terms and Conditions and claimed entitlement to reasonable attorney fees and costs.

The Glassbrenners subsequently took steps to set up their pending motion for adjudication in federal court. The Glassbrenners filed a notice of removal on June 26, 2014 (Dkt. No. 2) and then filed their answer on July 18, 2014 (Dkt. No. 7.) The original answer, drafted and signed by Thomas V. Hagerty ("Hagerty") of

the firm Hagerty & Brady, contained seven affirmative defenses and no counterclaims. In August 2014, Magistrate Judge Jeremiah McCarthy granted motions to allow attorneys Maureen E. Sweeney ("Sweeney") and Sharon M. Menchyk ("Menchyk") to appear *pro hac vice* from the firm of Blumling & Gusky, LLP in Pittsburgh, Pennsylvania. (Dkt. Nos. 12, 13.) Magistrate Judge McCarthy also issued a scheduling order (Dkt. No. 15), following a scheduling conference that Sweeney attended by telephone (Dkt. No. 14). On November 26, 2014, the Glassbrenners filed a motion to replace Menchyk with R. Anthony Rupp , III ("Rupp") from the firm of Rupp, Baase, Pfalzgraf, Cunningham & Coppola LLC. (Dkt. No. 22.) Magistrate Judge Leslie Foschio granted that motion. (Dkt. No. 24.) As far as this Court can tell, Hagerty and Sweeney remain counsel of record for the Glassbrenners; the substitution motion only removed Menchyk and added Rupp.

The Eagans filed their pending motion on October 31, 2014. According to the Eagans, this case is simple. To them, the leases that National Fuel disclosed in its letters required answering "yes" to Question 4 in the Property Condition Disclosure Statement. When the Glassbrenners answered "no," they lied. The National Fuel leases also required disclosure in the Oil and Gas Affidavit; when the Glassbrenners omitted those leases from that affidavit, they again lied. The Eagans view the Glassbrenners' deception as particularly galling given that the Glassbrenners admit in Paragraph 5 of the Oil and Gas Affidavit that "this

affidavit is made with the knowledge that any prudent purchaser, lender and/or title insurer of the above described lands will rely on the veracity of all statements made herein." (Dkt. No. 20-7 at 2.) According to the Eagans, since documentary evidence establishes the existence of leases and rent payments that the Glassbrenners never disclosed, no reasonable jury would decline to assess liability for breach of contract and fraud. The Glassbrenners respond to the Eagans' line of reasoning by pointing to the actual language of the documents in question. According to the Glassbrenners, Question 4 of the Property Condition Disclosure Statement aimed at leases or other encumbrances that would have been within their exclusive knowledge. The question explicitly exempts "documents available in the public record" from additional disclosure by the Glassbrenners. As for the Oil and Gas Affidavit, the Glassbrenners argue that it refers only to the four leases disclosed in Paragraph 2 of that document. The Glassbrenners assert that they did not receive rents or royalties for the leases in Paragraph 2. As for the rent payments that they did receive, the Glassbrenners contend that they thought that they were receiving those payments in connection to a certain pipeline and not because of storage operations. The Glassbrenners conclude that the Eagans' contentions may well be completely meritless but that they certainly are not amenable to summary judgment.

    While the motion for partial summary judgment was pending, Rupp, as new counsel for the Glassbrenners, filed the pending motion for leave to amend

on December 30, 2014. In support of the motion, Rupp contends that "[t]his law firm took over the matter from outgoing counsel on November 26, 2014, during the pendency of the plaintiffs' motion, and quickly filed opposition to the plaintiffs' motion on December 1, 2014. Now, as incoming counsel, approximately one month after taking over and only two months after the deadline set forth in the Case Management Order, after having a full opportunity to review and analyze the issues present in the case and before the Court, the defendants respectfully request that this Court amend the Case Management Order to allow the defendants to amend their answer to better reflect the nature of the action and the bargain of the parties in 2013." (Dkt.No. 26-1 at 3.) Specifically, Rupp wishes to add a counterclaim to the answer that Hagerty had signed—a counterclaim that invokes Section ATC14(C) and its provision for attorney fees just as the Eagans did in their complaint. Apart from the proposed counterclaim, Rupp's proposed amended answer (Dkt. No. 26-6) is identical to the original answer in all substantive respects. The Eagans have not filed any opposition to the proposed amended answer.

### III. DISCUSSION—MOTION FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the

10

outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

The substantive elements of the Eagans' two main claims are fairly straightforward. "[U]nder New York law, parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages. New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." *Merrill Lynch*

*& Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183–84 (2d Cir. 2007) (citation omitted). "To prove fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (internal quotation marks and citation omitted). "Under New York law, there are four elements to a breach of contract claim: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. To plead these elements a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (internal quotation marks and citations omitted).

Of all the issues that the parties have briefed, two draw the Court's immediate attention. One issue concerns the language of the relevant documents and the Eagans' due diligence. As noted above, the Eagans arranged for a title search and title search report prior to closing. The report, dated three days before the closing date, explicitly disclosed the five leases that National Fuel mentioned later in its two letters. The title search report contained enough information to allow the Eagans to search the public record for further

information about those leases.  *Cf. E. End Cement & Stone, Inc. v. Carnevale*, 903 N.Y.S.2d 420, 422 (App. Div. 2010) ("Here, given the proof that the plaintiff's attorney had actual knowledge of the title defect, the plaintiff's reliance on the alleged misrepresentations was not reasonable or justified.") (citations omitted); *New Horizons Amusement Enters., Inc. v. Zullo*, 754 N.Y.S.2d 98, 99 (App. Div. 2003) ("The record makes plain that plaintiff knew or should have known of the existence of the mortgage on the leased property by reason of the report of the title search company, which was prepared and delivered prior to execution of the lease . . . .")  That those leases appeared in the public record means that the Glassbrenners said nothing untrue when, for Question 4 of the Property Condition Disclosure Statement, they denied that anyone else had "a lease, easement or any other right to use or occupy any part of your property **other than those stated in documents available in the public record**."  (Dkt. No. 20-6 at 2 (emphasis added).)  A close reading of Question 5 of the Property Condition Disclosure Statement reveals no false answers there, either.  The full language of Question 5 reads, "Does anybody else claim to own any part of your property?"  (*Id.* at 3.)  If the answer had been yes then the question directs the writer to "explain below" by answering Questions 6–9.  Questions 6–9 ask supplemental questions about people denying access to a property, people making formal legal claims challenging title, features of the property shared with adjoining landowners or a homeowners association, utility surcharges for line

13

extensions, and certificates of occupancy. From that perspective, National Fuel's leases do not constitute any attempt to "own" the Property. The Glassbrenners' answer to Question 5 thus is not false. In any event, the disclosure of the leases and other information in the title search report would have alerted the Eagans to any problems with ownership claims. The Eagans' contentions about rents or royalties follows the same pattern. In Paragraph 4 of the Oil and Gas Affidavit, the Glassbrenners stated that "no rents or royalties have been received under the terms of **said leases** as **said leases** are expired by their own terms." (Dkt. No. 20-7 at 2 (emphasis added).) The phrase "said leases" refers to the four leases listed in Paragraph 2. Those four leases are not the leases mentioned in National Fuel's letters. Therefore, as long as the Glassbrenners did not receive rents or royalties from the four leases in Paragraph 2, their denial is not false. Summary judgment for breach or fraud thus cannot rest on events described above.

    The second issue that has drawn the Court's immediate attention concerns incomplete information regarding wells and storage facilities. In Question 14 of the Property Condition Disclosure Statement, the Glassbrenners disclosed the existence of fuel storage tanks currently in use. The record contains no information about the size or nature of the storage tanks. The Eagans' decision to waive two pre-closing inspections of the Property raises significant questions of fact as to what they could have discovered about the storage tanks or other

14

facilities upon inspection. *Cf. Fantigrossi v. Brannon Homes, Inc.*, 909 N.Y.S.2d 240, 241 (App. Div. 2010) ("[P]laintiffs are deemed to have waived the right to assert that defendant breached the parties' contract based on defendant's deviation from that contractual specification inasmuch as such a deviation would have been obvious during plaintiffs' pre-closing inspection of the home."); *DeFreitas v. Holley*, 461 N.Y.S.2d 351, 352 (App. Div. 1983) ("It is well established that a party for whose benefit a provision is inserted in a contract may waive that provision and accept performance of the contract as is.") (citations omitted). With respect to storage facilities, in Paragraph 4 of the Oil and Gas Affidavit, the Glassbrenners explicitly denied the drilling of any wells or the presence of any storage facilities under the Property. National Fuel explicitly confirmed natural gas storage operations under the Property in its two letters to the Eagans. The Oil and Gas Affidavit and the letters thus appear to contradict each other. Too many questions surround this contradiction, however, for the Court to intervene this early in the case. The record does not indicate whether National Fuel's storage "operations" in a natural rock formation occur in a way that would constitute a storage "facility." The record does not indicate whether the Eagans would have been able to detect National Fuel's storage operations from either of the pre-closing inspections that they waived. The record further does not indicate whether pulling the actual text of the five leases from the public record might have revealed the storage operations. Finally, the record in its

current form gives no clues about the Glassbrenners' intent. The Glassbrenners qualified their denial of wells and storage facilities with the phrase "to the best of our knowledge." Whether the Glassbrenners actually had knowledge of any storage operations must await discovery. *Cf. Alloy Briquetting Corp. v. Niagara Vest, Inc.*, 756 F. Supp. 713, 724 (W.D.N.Y. 1991) (Skretny, *J.*) ("[W]hether Niagara Vest actually had knowledge of the contamination at the time the alleged misrepresentation was made is a question of fact to be explored through discovery. Summary judgment at this time would be premature.").

This case may yet develop a record that answers the above questions definitively for a summary judgment motion. That development has not happened yet. For now, all the Court has is a record of hard feelings. Arguably, the Glassbrenners would have been more helpful if they had at least disclosed that they had been receiving checks from National Fuel, even if they were not sure why. The Eagans have not accused the Glassbrenners of being unhelpful, however; they have accused them of breach of contract and fraud, and the record in its current state simply does not support such serious accusations. Accordingly, the Court recommends denying the summary judgment motion but without prejudice to renewal after the close of discovery.

## IV. DISCUSSION—MOTION TO AMEND

The Court now proceeds to the Glassbrenners' non-dispositive motion for leave to amend. The standards governing motions to amend pleadings are

16

straightforward. "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FRCP 15(a)(2). Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citation omitted).

   Here, the Court sees no barriers to amendment. The argument about new counsel "taking over the matter from outgoing counsel" is slightly misleading, though not purposefully. The attorneys who drafted the original answer and attended the original scheduling conference remain counsel of record. Nonetheless, the case still is new enough that discovery has barely begun, if it has begun at all. The proposed counterclaim would add no new parties or theories of liability. New counsel wants only to invoke a contractual provision that already exists and that the Eagans already claimed for themselves in their complaint. Allowing the amendment thus will put the parties on equal footing for the issue of attorney fees. Prejudice seems highly unlikely. Also, the proposed counterclaim does not appear to raise any possibility of bad faith, and the Eagans have not suggested otherwise. *Cf., e.g., Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) ("Here, at this early stage of the case, there is no concern about delay, bad faith, or prejudice. The critical issue is whether the [amendment] would be futile.");

*Peters v. City of Buffalo*, 848 F. Supp. 2d 378, 382 (W.D.N.Y. 2012) (Skretny, C.J.) ("Defendants have provided no grounds on which they would be prejudiced. Further, this Court finds that at this early stage of the litigation there is no undue prejudice to defendants that would preclude amendment of the complaint."). These circumstances weigh in favor of allowing the amendment.

The Court thus grants the motion for leave to amend.  The Glassbrenners will have 30 days from the date of this Decision and Order to file and to serve the amended answer.  As for scheduling, since the parties never have appeared before this Court for any scheduling proceedings, a new scheduling conference probably is appropriate.  The Court will issue further directions about scheduling once Judge Skretny makes a final decision on the motion for partial summary judgment.

## V. CONCLUSION

For all of the foregoing reasons, the Court:

1) Respectfully recommends denying the Eagans' motion for partial summary judgment (Dkt. No. 20) without prejudice to renew after the close of discovery; and

2) Grants the Glassbrenners' non-dispositive motion for leave to amend (Dkt. No. 26).  The Glassbrenners will have 30 days from the date of this Decision and Order to file and to serve the amended answer.

## VI. OBJECTIONS

A copy of this combined Report and Recommendation and Decision and Order will be sent to counsel for the parties by electronic filing on the date below. Any objections must be electronically filed with the Clerk of the Court within 14 days.  See 28 U.S.C. § 636(b)(1); FRCP 72.  "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).


      SO ORDERED.

                                              __/s Hugh B. Scott_____
                                              HONORABLE HUGH B. SCOTT
                                              UNITED STATES MAGISTRATE JUDGE

DATED: June 10, 2015